### In the Matter of L.F.L.T.B., a juvenile.

### No. 11-03-00408-CV.

Court of Appeals of Texas,
Eastland.

May 13, 2004.

---

Jeff E. Johnson, Abilene, for appellant.

James Eidson, District Attorney, Harriett Haag, Assistant, Patricia Dyer, Assistant Criminal Dist. Attorney's Office, Abilene, for appellee.

Panel consists of: ARNOT, C.J., and WRIGHT, J., and McCALL, J.

Opinion

W.G. ARNOT, III, Chief Justice.

This is an appeal from a judgment adjudicating a juvenile of delinquent conduct. The jury found that L.F.L.T.B. engaged in the aggravated assault of G.J.A. The trial court committed L.F.L.T.B. to the Texas

Youth Commission until his 21st birthday. We affirm.

In a sole issue on appeal, L.F.L.T.B. contends that the evidence is insufficient to support the jury's finding that he engaged in delinquent conduct. The State alleged that L.F.L.T.B. exhibited or used a deadly weapon "to-wit: a *large pocket knife,* which in its manner of use or intended use [was] capable of causing death or serious bodily injury" when he intentionally, knowingly, or recklessly caused bodily injury to G.J.A. (Emphasis added) In his brief, L.F.L.T.B. argues that, by specifically alleging the weapon was a large pocket knife, the State undertook a higher burden and was required to prove the type of knife used. L.F.L.T.B. bases his argument on his contention that there is no evidence the knife was a pocket knife and on G.J.A.'s testimony that the knife looked like a letter opener, that "it couldn't have been a folding knife," and that "it could not have been a pocket knife." [1]

The adjudication of a juvenile as a delinquent is based on the criminal standard of proof: beyond a reasonable doubt. TEX. FAM. CODE ANN. § 54.03(f) (Vernon Supp.2004). The appellate court, therefore, applies the same standards applicable to challenges to the sufficiency of the evidence in criminal cases. *In the Matter of Z.L.B.,* 115 S.W.3d 188 (Tex. App.-Dallas 2003, no pet'n); *In the Matter of E.R.L.,* 109 S.W.3d 123 (Tex.App.-El Paso 2003, no pet'n); *In the Matter of J.D.P.,* 85 S.W.3d 420 (Tex.App.-Fort Worth 2002, no pet'n). In order to determine if the evidence is legally sufficient, we must review all of the evidence in the light most favorable to the verdict and determine whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Jackson v. Virginia,* 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); *Jackson v. State,* 17 S.W.3d 664 (Tex.Cr. App.2000). In order to determine if the evidence is factually sufficient, we must review all of the evidence in a neutral light and determine whether the evidence supporting guilt is so weak as to render the conviction clearly wrong and manifestly unjust or whether the evidence supporting guilt, although adequate when taken alone, is so greatly outweighed by the overwhelming weight of contrary evidence as to render the conviction clearly wrong and manifestly unjust. *Vasquez v. State,* 67 S.W.3d 229, 236 (Tex.Cr.App.2002); *Goodman v. State,* 66 S.W.3d 283 (Tex.Cr.App. 2001); *Johnson v. State,* 23 S.W.3d 1, 11 (Tex.Cr.App.2000); *Cain v. State,* 958 S.W.2d 404 (Tex.Cr.App.1997); *Clewis v. State,* 922 S.W.2d 126 (Tex.Cr.App.1996). The jury, as the finder of fact, is the sole judge of the weight and credibility of the witnesses' testimony. TEX. CODE CRIM. PRO. ANN. arts. 36.13 & 38.04 (Vernon 1979 & 1981).

In essence, L.F.L.T.B. is arguing that the evidence is insufficient because there is a variance between the type of deadly weapon the State alleged was used (large pocket knife) and the type of deadly weapon the State proved was used (a knife that by its manner of use caused serious bodily injury). The Court of Criminal Appeals held in *Malik v. State,* 953 S.W.2d 234, 240 (Tex.Cr.App.1997), that the "sufficiency of the evidence should be measured by the elements of the offense as defined by the hypothetically correct jury charge for the case." The court broadened the ramifications of *Malik* by holding that, for

1. L.F.L.T.B. argues that there is "no evidence" to support the verdict (a legal sufficiency argument) and requests a remand (factual sufficiency relief). In the interest of justice, we will treat the issue as challenging both the legal and factual sufficiency. TEX. R.APP.P. 38.1(e) & 38.9.

the purposes of a sufficiency of the evidence review, "a hypothetically correct charge need not incorporate allegations that give rise to immaterial variances." *Gollihar v. State,* 46 S.W.3d 243, 256 (Tex. Cr.App.2001). Therefore, the question before this court is whether the variance in this case is material or immaterial. *Gollihar v. State, supra; Wilson v. State,* 113 S.W.3d 785 (Tex.App.-Tyler 2003, no pet'n).

G.J.A. testified that, during his fist fight with L.F.L.T.B., he saw L.F.L.T.B. reach into his pocket and pull out a knife. L.F.L.T.B. then stabbed G.J.A. in his left side. G.J.A. testified that he saw the knife as L.F.L.T.B. pulled it out of his side. The blade was chrome. The knife "looked like a letter opener, kind of," and it was "[a]bout six and a half inches" in length. G.J.A. stated that the knife was "skinny" and that it was "a little more than an inch" wide. There was blood on the knife, and a piece of G.J.A.'s intestine was "hanging out."

G.J.A. testified that he did not have a gun, a knife, or any other type of weapon during the fight. When asked if he could have accidently fallen on the knife, G.J.A. responded: "I know I didn't fall on the knife." G.J.A. repeatedly testified that he saw the knife in L.F.L.T.B.'s right hand.

G.J.A. was hospitalized for six days as a result of the knife wound. He required surgery to repair and reconnect his intestines.

During L.F.L.T.B.'s cross-examination of G.J.A., the following occurred:

Q: But let's get back to the letter opener. Tell me what it looked like. What color was it?

A: I didn't see the handle part because his hand was on it, but I was looking at the blade and it was pretty chrome.

Q: Did you get the impression it was just a straight—

A: No. It was a straight—it was straight.

Q: Okay. Is it the kind that folds up?

A: I don't know, but I just seen it—I just seen it out and he could—it couldn't have been a folding knife because [L.F.L.T.B.]'s not that fast.

Q: What do you mean "he's not that fast"?

A: He's not that fast.

Q: So it couldn't have been a—

A: Because my eye ain't—my eye is not slow. I seen him just pull it out quick. He can't open it and stab me, so it was already open in the class.

Q: Okay. So it could not have been a pocket knife then, right?

A: No.

Q: Are you sure?

A: I'm sure.

Q: You are positive it was not a pocket knife?

A: Well, it was pretty long.

On redirect, G.J.A. stated that the knife came from L.F.L.T.B.'s pocket, that it was "medium-sized," that the blade was "pretty big," and that the blade was "straight" and "sharp on both sides." G.J.A. testified that the knife was open when he saw it and that he could not tell if the knife would fold up.

J.A. testified that he saw the fight. After the stabbing, J.A. saw L.F.L.T.B. walking with a knife in his hand. J.A. described the knife as "like one of them little switch blade things." The blade was about four to six inches long and was silver or chrome.

L.F.L.T.B. testified that he did not have a knife and that he did not stab G.J.A. L.F.L.T.B. stated that he had "no idea" how G.J.A. received a knife wound. Although he did not see a knife on G.J.A., L.F.L.T.B. thought that maybe G.J.A. fell on his own knife.

■ TEX. PENAL CODE ANN. § 22.02 (Vernon Supp.2004) provides that

a person commits the offense of aggravated assault if he uses or exhibits a deadly weapon during the commission of an assault. A deadly weapon is defined as "anything that in the manner of its use or intended use is capable of causing death or serious bodily injury." TEX. PENAL CODE ANN. § 1.07(17)(B) (Vernon Supp. 2004). A knife is not a deadly weapon per se, and it is the manner of or intended manner of use or exhibition of a knife capable of causing death or serious bodily injury that makes it a deadly weapon pursuant to Sections 1.07(17)(B) and 22.02. *McCain v. State,* 22 S.W.3d 497 (Tex.Cr. App.2000). It is the use or the exhibition of a deadly weapon, not the identification or the name of a particular type of knife, that is an element of aggravated assault. Section 22.02.

Therefore, the State's addition of the words "large" and "pocket" to its allegation that a "knife, which in its manner of use or intended use [was] capable of causing death or serious bodily injury" were immaterial allegations. The material allegation was that the knife, "in its manner of use or intended use [was] capable of causing death or serious bodily injury." *Gollihar v. State, supra; Wilson v. State, supra.*

The record clearly establishes that the knife used in the offense was a deadly weapon. G.J.A. testified that, when he watched the knife being pulled out of his side, he saw a portion of his intestines protruding. The medical testimony established that the injury was serious, that it could have caused death, that a portion of G.J.A.'s colon had to be removed, and that the remaining sections had to be reattached. There is sufficient testimony to establish the material allegation that the "knife, which in its manner of use or intended use [was] capable of causing death or serious bodily injury." The sole evidence is both legally and factually sufficient to support the jury's verdict. The sole issue is overruled.

The judgment of the trial court is affirmed.