Opinion filed January 18, 2007
















 
 
  
 
 







 
 
  
 
 




Opinion filed January 18, 2007

 

 

 

 

 

 

                                                                        In The

                                                                              

    Eleventh Court of Appeals

                                                                 ____________

 

                                                          No. 11-05-00200-CV

                                                    __________

 

                                       IN THE MATTER OF A.N.V.

 



 

                                        On
Appeal from the County Court at Law

 

                                                        Midland County, Texas

 

                                                     Trial
Court Cause No. 5322

 



 

                                              M
E M O R A N D U M   O P I N I O N

 

This is an appeal from a judgment adjudicating a
juvenile of delinquent conduct.  The jury
found that A.N.V. engaged in delinquent conduct by burglarizing two vehicles
and by committing multiple instances of criminal mischief in which he destroyed
windows.  The trial court then ordered
that A.N.V. be committed to the Texas Youth Commission for an indeterminate
period of time not to extend beyond A.N.V.=s
twenty-first birthday.  We affirm.  








A.N.V. presents two issues for review.  He challenges the legal sufficiency of the
evidence in the first issue and the factual sufficiency of the evidence in the
second issue.  The adjudication of a
juvenile as a delinquent is based on the criminal burden of proof:  beyond a reasonable doubt.  Tex.
Fam. Code Ann. '
54.03(f) (Vernon
Supp. 2006).  Therefore, we apply the
same standards of review in juvenile cases challenging the sufficiency of the
evidence as we do in criminal cases.  In
re L.F.L.T.B., 137 S.W.3d 856, 858 (Tex.
App.CEastland
2004, no pet.); In re Z.L.B., 115 S.W.3d 188 (Tex.
App.CDallas
2003, no pet.); In re E.R.L., 109 S.W.3d 123 (Tex.
App.CEl Paso
2003, no pet.); In re J.D.P., 85 S.W.3d 420 (Tex. App.CFort
Worth 2002, no pet.).  To determine if
the evidence is legally sufficient, we must review all of the evidence in the
light most favorable to the verdict and determine whether any rational trier of
fact could have found the essential elements of the crime beyond a reasonable
doubt.  Jackson v. Virginia,
443 U.S. 307 (1979); Jackson v. State, 17 S.W.3d 664 (Tex. Crim. App.
2000).  To determine if the evidence is
factually sufficient, the appellate court reviews all of the evidence in a
neutral light.  Watson v. State,
204 S.W.3d 404, 414-15, 417 (Tex. Crim. App. 2006) (overruling in part Zuniga
v. State, 144 S.W.3d 477 (Tex. Crim. App. 2004)); Johnson v. State,
23 S.W.3d 1, 10-11 (Tex. Crim. App. 2000); Cain v. State, 958 S.W.2d
404, 407-08 (Tex. Crim. App. 1997); Clewis v. State, 922 S.W.2d 126, 129
(Tex. Crim. App. 1996).  Then, the
reviewing court determines whether the evidence supporting the verdict is so
weak that the verdict is clearly wrong and manifestly unjust or whether the
verdict is against the great weight and preponderance of the conflicting
evidence.  Watson, 204 S.W.3d at
414-15, 417;  Johnson, 23 S.W.3d
at 10-11.  The jury, as the finder of
fact, is the sole judge of the weight and credibility of the witnesses= testimony.  Tex.
Code Crim. Proc. Ann. art. 36.13 (Vernon
1981), art. 38.04 (Vernon
1979).  

The record shows that several witnesses testified
at trial.  With respect to the vehicular
burglaries, the evidence shows that an eyewitness who knew A.N.V. from school
saw him hanging around the apartment complex on the day of the burglaries.  This witness, Ronnie Velarde, testified that
A.N.V. asked him if he wanted to help steal some Adecks@ and that, when Velarde refused, A.N.V.
threatened him.  Velarde subsequently saw
A.N.V. steal three stereos and two speakers from vehicles at the apartment
complex.  Velarde stated that A.N.V.
wanted to hide the stolen items in Velarde=s
apartment but, instead, hid them in a bush by Velarde=s
apartment.  A.N.V. said that he would
come back that night to get them.  A.N.V.
again threatened Velarde.








Later that evening, Officer Joel Bermea was
dispatched to the apartment complex when the vehicle owners discovered the
burglaries.  Officer Bermea investigated
these vehicular burglaries and confirmed that three stereos had been
taken.  Velarde told the officer that he
had witnessed the crimes and gave a description, which he subsequently
recanted, of the alleged assailant. 
Later that evening, Officer Bermea was again dispatched to the apartment
complex when summoned by the complex security guard, Deputy Johnny Rodriguez.

When Officer Bermea arrived the second time,
Deputy Rodriguez had recovered the stereos and had detained A.N.V.  At this point in time, Velarde had informed
Deputy Rodriguez and one of the complainants that A.N.V. committed the
crimes.  Velarde told Officer Bermea that
he had not told the truth originally because he feared A.N.V. and A.N.V.=s older brother.

Deputy Rodriguez testified that Velarde informed
him about the burglaries, the stereos, and A.N.V.=s
involvement.  Velarde and his mother
brought the stereos to Deputy Rodriguez. 
While they were outside, they noticed A.N.V. and another boy walking up
to the complex.  Neither one lived at the
complex, and it was after curfew.  A.N.V.
was wearing dark-colored clothing and carrying a black backpack.  Inside the backpack was a dark blue beanie
hat, a small screwdriver, and a Sprite. 
A.N.V. was detained until Officer Bermea arrived.   A.N.V. testified that he did not steal the
stereos but that Velarde had tried to sell him those stereos and speakers.

After reviewing the entire record, we hold that
the evidence is both legally and factually sufficient to show that A.N.V.,
without the effective consent of the owners, broke into or entered vehicles
with intent to commit theft and, thus, committed the offenses of burglary of a
vehicle.  See Tex. Pen. Code Ann. ' 30.04 (Vernon 2003).   

The evidence with respect to the criminal mischief
charges shows that, on February 8, 2005, several windows were shattered at a
Mervyn=s and
nearby stores.  Several vehicles were
also damaged.  Later that month on
February 21, A.N.V.=s
brother, Abdon Joe Vigil Jr., and Abdon=s
girlfriend, Amanda Hannick, were apprehended during another spree involving the
shattering of windows.  Officers located
the suspect vehicle near Detective Manuel Beltran=s
house where a pickup window had just been shattered.  Detective Beltran, who had investigated the
incidents in the Mervyn=s
area, recognized that the suspect vehicle involved in the February 21 incidents
was similar to the one caught on the Mervyn=s
video surveillance on February 8.








When the vehicle was stopped on February 21, there
were BBs all over the floorboard in the front and back. Empty air cartridges
and a BB or pellet gun were also found in the vehicle.  Abdon and Hannick were in the vehicle; A.N.V.
was not.  During questioning, Abdon and
Hannick told Detective Beltran that they were involved with the criminal
mischief in the Mervyn=s
area.  Abdon implicated A.N.V. in the
Mervyn=s area
criminal mischief.  Hannick separately
confirmed A.N.V.=s
involvement.  Both stated that Abdon was
driving and that A.N.V. was shooting out the windows with his BB gun.  Abdon and Hannick told Detective Beltran that
A.N.V. had some BBs and a BB gun at his house that he had used to shoot out the
windows at and near Mervyn=s.

Detective Beltran then went to A.N.V.=s residence and received consent from
A.N.V.=s parents
to search his room.  CO2
cartridges and BBs were found in A.N.V.=s
room, but no BB gun.  At that time,
A.N.V. told Detective Beltran that he owned a BB gun, but neither A.N.V. nor
the officers were able to find it at the time of the search.

Hannick=s
vehicle was impounded and driven by Mervyn=s
to make a second video surveillance tape. 
Detective Beltran testified that the vehicles looked the same; Hannick
disagreed, stating that the car in the first videotape was not hers.  Both videotapes were introduced into evidence
so that the jury could compare the tapes and determine whether the same vehicle
was involved.  

At trial, both Abdon and Hannick told a different
story than they had told to Detective Beltran on February 21.  At trial, Abdon testified that he, Hannick,
and A.N.V. went to Wal-Mart on February 8 and then went home.  He denied having anything to do with the Mervyn=s area incidents. Abdon did admit that
he told Detective Beltran that A.N.V. had a BB gun and that A.N.V. shot out the
windows at those businesses.

Hannick also recanted her previous statement.  She testified at trial that none of them were
involved with the Mervyn=s
area shootings.  Hannick admitted that
Abdon shot out some windows on February 21 B  when A.N.V. was not present.  Hannick also admitted that she had previously
told Detective Beltran that A.N.V. shot out the windows at and near Mervyn=s. 


A.N.V. testified and denied any involvement with
shooting out the windows.  A.N.V. also
denied having owned a BB gun in the past two or three years.

We hold, after reviewing the entire record using
the standards announced above, that the evidence is both legally and factually
sufficient to show that A.N.V. committed various acts of criminal mischief by
damaging or destroying the tangible property of others.  See Tex.
Pen. Code Ann. '
28.03 (Vernon
Supp. 2006).  








With reference to his issues on appeal, A.N.V.
also urges that the accomplices=
testimony was not corroborated.  The
Texas Family Code does not allow accomplice testimony in adjudication hearings
unless it is corroborated.  See Tex. Fam. Code Ann. ' 54.03(e) (Vernon Supp. 2006).  Under Section 54.03(e), corroboration is
sufficient if it tends to connect the juvenile to the alleged delinquent
conduct.  Id. 
The non‑accomplice evidence does not have to be sufficient in
itself to support a conviction beyond a reasonable doubt, nor does it have to
directly link the accused to the crime; it need only tend to connect A.N.V. to
the offense.  See McDuff v. State,
939 S.W.2d 607, 612 (Tex. Crim. App. 1997) (applying Tex. Code Crim. Proc. Ann. art. 38.14 (Vernon 2005), which is
similar to Section 54.03(e)).  To
determine whether the corroboration is sufficient, we must eliminate from
consideration the accomplice-witness testimony and then examine the other
inculpatory evidence to ascertain whether the remaining evidence tends to
connect the accused with the offense.  Id.; Reed v.
State, 744 S.W.2d 112 (Tex. Crim. App. 1988).  Corroboration of an accomplice=s testimony is required only if the
testimony is Aadduced
in open court by live witnesses under oath.@  Bingham v. State, 913 S.W.2d 208, 210‑13
(Tex. Crim. App. 1995).  In Bingham,
the court determined that the accomplice-witness rule does not apply to out‑of‑court
statements.  Id. 


We must first ascertain which of the witnesses
were accomplices.  An accomplice is one
who participates with the accused B
before, during, or after the offense B
to the extent that he or she can be charged with the offense or with a lesser‑included
offense.  Herron v. State, 86
S.W.3d 621, 631 (Tex.
Crim. App. 2002).  Mere presence at a
crime scene does not make an individual an accomplice, nor is an individual an accomplice
merely because he has knowledge about a crime and fails to disclose that
knowledge.  Cocke v. State, 201
S.W.3d 744, 748 (Tex. Crim. App. 2006). 








As conceded by the State, Abdon and Hannick were
accomplices in the criminal mischief charges. 
Both testified at trial. 
Excluding their in-court testimony from consideration, we hold that
there is other evidence in the record tending to connect A.N.V. to the offense.  Detective Beltran testified without
objection  regarding the out-of-court
statements made by Abdon and Hannick. 
Both implicated A.N.V. in the shootings at and around Mervyn=s. 
Under Bingham, these out-of-court statements may be used to
corroborate the accomplice testimony. 
Moreover, there was other evidence tending to connect A.N.V. to the
crimes.  A.N.V. admitted to Detective
Beltran that he owned a BB gun; and, when his room was searched, CO2
cartridges and a box of BBs were found. We conclude that the non-accomplice
evidence tends to connect A.N.V. to the crimes and is sufficient to corroborate
the accomplices=
testimony.  

With respect to the burglary charges, A.N.V.
argues that Velarde was an accomplice. 
We disagree.  Although A.N.V.
suggested that Velarde tried to sell him the stereos, there was no evidence
indicating that Velarde participated in burglarizing the vehicles or committed
a lesser-included offense with respect to those burglaries.  A person commits the offense of burglary of a
vehicle if, without the effective consent of the owner, he breaks into or
enters a vehicle or any part of a vehicle with intent to commit any felony or
theft.  Section 30.04.  Nothing in the record shows that Velarde
broke into any vehicle or that he otherwise participated with A.N.V. in
burglarizing the vehicles.  Moreover,
where the evidence regarding the witness=s
status as an accomplice is conflicting, the jury must make that determination
as a matter of fact.  Blake v. State,
971 S.W.2d 451, 455 (Tex. Crim. App. 1998). 
In this case, the jury was free to determine that Velarde was not an
accomplice.  We overrule A.N.V.=s issues for review.  

The judgment of the trial court is affirmed.  

 

 

AUSTIN McCLOUD

SENIOR JUSTICE

 

January 18, 2007

Panel
consists of:  Wright, C.J.,

McCall, J., and McCloud, S.J.[1]











[1]Austin McCloud, Retired Chief Justice, Court of
Appeals, 11th District of Texas at Eastland sitting by assignment.